Kent M. Henderson (SBN 139530); hendolaw@gmail.com
Angel Carrazco, Jr.  (SBN 230845); angel@carrazcolawapc.com
**GUIZAR, HENDERSON & CARRAZCO, LLP**
18301 Irvine Boulevard
Tustin, CA 92780
Telephone:  (714) 541-8600
Facsimile:   (714) 541-8601

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA L. FIGUEROA DE MAGDALENO, individually, and as Successor, in interest to JAVIER MAGADALENO GUTTIERREZ, JUAN JAVIER MAGDALENO, Individually YOSELIN MAGDALENO and IVETH MAGDALENO, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE, a legal subdivision of the state of California; CALIFORNIA HIGHWAY PATROL, a governmental agency of the state of California; DEREK THOMAS; an individual, JOHN GETTE, an individual; and DOES 1 through 10, inclusive <br><br> Defendants. | CASE NO.:  5:21-cv-02027-JGB (SHKx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STATE OF CALIFORNIA (CHP) AND JOHN GETTE** <br><br> Date:          August 7, 2023 <br> Time:          9:00 a.m. <br> Courtroom:   1 <br> Judge:         Hon. Jesus G. Bernal <br><br> *(Filed concurrently with Plaintiffs' Separate Statement of Disputed and Undisputed Facts in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment; Plaintiffs' Statement of Objections to Defendants' Proffered Evidence; Declaration of Angel Carrazco, Jr.; Exhibits A-T in support thereto)* |

**TO THE CLERK OF THE COURT, THE HONORABLE JESUS G. BERNAL, DEFENDANTS STATE OF CALIFORNIA (CHP) AND JOHN GETTE, AND TO THEIR ATTORNEYS OF RECORD HEREIN:** Please take notice that Plaintiffs ALMA MAGDALENO, et. al. hereby oppose the Motion for Summary Judgment of Defendants STATE OF CALIFORNIA (CHP) and JOHN GETTE. The Plaintiffs' Opposition is based on the following Memorandum of Points and Authorities; Plaintiff's Separate Statement of Disputed and Undisputed Material Facts; Declaration of Angel Carrazco, Jr. and Exhibits Thereto.

DATED:  July 24, 2023

**GUIZAR, HENDERSON & CARRAZCO, LLP**

*/S/ Angel Carrazco, Jr.*

By: _____

      Angel Carrazco, Jr.
      Kent M. Henderson
      Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

**I.** INTRODUCTION/STATEMENT OF FACTS...…………………………...1

**II.** ON A MOTION FOR SUMMARY JUDGMENT, INFERENCES MUST
BE TAKEN IN FAVOR OF THE NON-MOVING PARTY FAVOR;
DEFENDANTS IMPROPERLY TURN THE STANDARD ON ITS
HEAD AND SEEK TO HAVE THEIR INTERPRETATION OF THE
FACTS TAKEN IN THEIR FAVOR WHEN THE FACTS ARE
DISPUTED AND THE MOTION FOR SUMMARY JUDGMENT
MUST BE DENIED…………………………………………………………..7

**III.** DEFENDANTS' MSJ MUST BE DENIED AS TO PLAINTIFFS' 4TH
AMENDMENT CLAIM, WHERE THERE ARE TRIABLE ISSUES
OF MATERIAL FACT WHETHER THE USE OF FORCE WAS
EXCESSIVE AND VIDEO AND TESTIMONY EVIDENCE
CLEARLY SHOW IT WAS NOT OBJECTIVELY REASONABLE
TO JAVIER MAGDALENO TO DEATH………………………….9

**IV.** THERE IS NO BASIS FOR QUALIFIED IMMUNITY WHERE
THE FORCE USED WAS EXCESSIVE AND THE LAW WAS
CLEARLY ESTABLISHED THAT AN OFFICER CANNOT
SHOOT TO DEATH A SUBJECT WHO POSES NO THREAT.............15

**V.** DEFENDANTS' MOTION MUST BE DENIED AS TO PLAINTIFFS'
SUBSTANTIVE DUE PROCESS VIOLATION, 14TH AMENDMENT
CLAIM, WHERE THERE ARE TRIABLE ISSUES OF MATERIAL
FACT WHETHER DEFENDANT JOHN GETTE ACTED WITH
DELIBERATE INDIFFERENCE OR A PURPOSE TO HARM
UNRELATED TO ANY LEGITIMATE LAW ENFORCEMENT
PURPOSE.....................................................................................20

**VI.** DEFENDANTS' MOTION MUST BE DENIED AS TO
PLAINITFFS' SUPPLEMENTAL STATE LAW CLAIMS…………….21

    A.    Defendants' MSJ as to Plaintiffs' Battery Claim
        Must be Denied…………………………………………………….21

    B.    Defendants' Motion for Summary Judgment Must be Denied
        on Plaintiffs' Negligence Claim ......................................................22

1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS STATE OF CALIFONIA (CHP) AND JOHN GETTE**

C.    Defendant's Motion for Summary Judgment Must Be
Denied on Plaintiff's California Civil Code Section
52.1 Claim ......................................................................24

**VII.**    CONCLUSION ............................................................25

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS STATE OF CALIFONIA (CHP) AND JOHN GETTE**

# TABLE OF AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Federal Cases**

A.K.H. v. City of Tustin, et.al, No. 14-55184 (9th Cir. 2016)....................12, 16

Anderson v. Creighton, 483 U.S. 635 (1987)...............................................16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...............................…...8

Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).................10

Brandenburg v. Cureton, 882 F.2d 211, 213-215 (6th Cir. 1989).....…...............17

Brosseau v. Haugen, 543 U.S. 194, 198 (2004)............…......….......…...........15

Bruce v. Yist, 351 F.3d 1283 (9th Cir. 2003)..............................................15

Bryan v. MacPherson, 630 F.3d 805 (9th Cir. 2010).........................….....10, 11, 20

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)...........…...…...............…......…...8

Chaudhry v. City of Los Angeles, 751 F.3d 1096 (9th Cir. 2014)....................21

Corales v. Bennett, 567 F.3d 554 (9th Cir. 2009)..........................….......…..8

County of Sacramento v. Lewis, 523 U.S. 833 (1998)..................................21

Cruz v. City of Anaheim, 765 F.3d 1076 (9th Cir. 2014)............…........…...14, 15

Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir. 1991)........................13, 17

Deorle v. Rutherford, 272 F.3d 1272 (2001)..........................…….....................9

Diaz v. Anaheim, 840 F.3d 592 (9th Cir. 2016).....................................18, 19

Espinosa v. City and County of San Francisco,
598 F.3d 528 (9th Cir. 2010)..........................................…...........…...10, 19

Estate of Andy Lopez v. Gelhaus, et.al.,
871 F.3d 998 (9th Cir. 2017)............................................…....13, 17, 18

Fancher v. Barrientos 723 F.3d 1191 (10th Cir. 2013)...........................................20

First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253 (1968).............................8

Franklin v. Foxworth, 31 F.3d 873 (9th Cir. 1994)…....................…...….....11

Gant v. City of Los Angeles, 717 F.3d 702 (9th Cir. 2013)..............…............21

George v. Morris, 736 F.3d 829 (9th Cir. 2013)..........................…...…......10

Glenn v. Washington County, 673 F.3d 864 (9th Cir. 2011)...........................10

Gonzalez v. City of Anaheim 747 F.3d 789 (9th Cir. 2014)...........................15, 17

Graham v. Connor, 490 U.S. 386 (1989) ……………………….…........5, 9, 10, 11

Green v. City and County of San Francisco,

751 F.3d 1039 (9th Cir. 2014)..............................................................8, 9, 17

Harlow v. Fitzgerald, 457 U.S. 800 (1982)…………………………….……….15

Harris v. Roderick, 126 F.3d 1189 (9th Cir. 1997)……..……………..……..…18

Hayes II, 736 F.3d 1232, 1236 (9th Cir. 2013)……………………………….…23

Headwaters Forest Def. v. County of Humboldt,

240 F.3d 1185 (9th Cir. 2000)………………………………………….......9, 11, 17

Headwaters II, 276 F.3d, 1125, 1130………………………………….……….9

I.A. v. City of Emeryville, 15-CV-04973-DMR (N.D. Cal. 2017)…………..…….18

Isayeva v. Sacramento Sheriff's Dep't,

872 F.3d 938, 947 (9th Cir. 2017)……………………………………..…..20

Jeffers v. Gomez, 267 F.3d 895 (9th Cir. 2001)…………………..………………15

J.L.D. v. City of Los Angeles, 555 F.App'x 670 (9th Cir. 2014)..............................14

Liston v. County of Riverside, 120 F.3d 956, 976 (9th Cir. 1997)………..…….…..9

Longoria v. Pinal County, 16-15606, October 10, 2017……………….…………13

Mattos v. Agamito, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)………………10, 16

Pearson v. Callahan, 555 U.S. 223, 244 (2009)…………………………….......15, 16

Porter v. Osborn, 546 F.3d 1131 (9th Cir. 2008)…………………………….........21

Price v. County of San Diego,

990 F. Supp. 1230, 1244 (S.D. Cal. 1996)………………………………………….25

Rivers v. Bowers, 2008 WL 2079406 (S.D. Ohio 2008)…………………………..20

Saman v. Robbins, 173 F.3d 1150 (9th Cir. 1999)…………………………….…...22

Santos v. Gates, 287 F.3d 846 (9th Cir. 2002)……………………………..…….9, 10

Saucier v. Katz, 553 U.S. 194 (2001)……………………………………….............16

Scott v. Harris, 550 U.S. 373 (2007)………………………………………………10, 15

Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)……………………………..15, 17

S.E.C. v. Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978)……....…….…8

S.E.C. v. M &A W, Inc., 538 F.3d 1043, 1054-55 (9th Cir. 2008)………...……….8

2

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF DEFENDANTS STATE OF CALIFONIA (CHP) AND JOHN GETTE

*Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)………….................10

*S.R. Nehad v. Browder*, 929 F. 3d 1125 (9th Cir. 2019)…………………………19

*Tabares v. City of Huntington Beach*,

988 F.3d 1119, 1125 (9th Cir. 2021)…………………………………………….23

*Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014)………………………………...21

*Ting v. United States* 927 F.2d 1504, 1501 (9th. Cir. 1991)...................................14

*Tennessee v. Garner*, 471 U.S. 1 (1985)………………………….....................12

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011)………..…………..…9, 16

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*,

809 F.2d 626, 630 (9th Cir. 1987)………………….…………………..………...…8

*White v. Pauly*,137 S. Ct. 548, 551 (2017)……………………………………….20

*Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003)………………...…….15, 16

*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)……..……………...15, 17, 21

*Wilson v. Layne*, 526 U.S. 603 (1999) ………………………………...………..16

**Federal Law and Statutory Authority**

F.R.C.P. Rule 56…………………………………….…………………..………...8

42 U.S.C. §1983…………………………………………….……………………22

4th Amendment……………………………………………...9, 12, 14, 15, 16, 23

14th Amendment………………………………………………………………….21

**State of California Cases**

*Cornell v. City and County of San Francisco*,

17 Cal.App.5th 766, 791 (2017)………………………………………………..24

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269 (1998)…………………..21, 22, 25

*Grudt v. City of Los Angeles*, 2 Cal.3d 575 (1970)……………………………22

*Hayes v. County of San Diego* 57 Cal.4th 622 (2013)………………..…….22, 23, 25

*Hernandez v. City of Pomona*, 46 Cal. 4th 501, 518 (2009)………………....…22

*Johnson v. State of California*, 69 Cal.2d 782, 793 (1968)……………………...25

*Lopez v. Surchia*, 112 Cal.App.2d 314 (1952)…………………………...……...21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rains v. Superior Court, 150 Cal.App.3d 933 (1984)..................................21

Scruggs v. Haynes, 252 Cal.App.2d 256 (1967)...............................22, 24, 25

Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (2004)....................24

**State Law and Statutory Authority**

CACI 440…………………………………………………….………..,…..,,,,……..23, 24

CACI 1305……………………………………………….……………..,,,………22, 24

CACI 3066…………………………………………………………………………….24

Cal. Civ. Code §52.1……………………………………………………………….24, 25

Government Code Section 815.2……………………………………...………24, 25

Government Code Section 820……………………………………………..…..23

Government Code Section 820.2………………………………………………25

Penal Code Section 835………………………………….…………………..…21

Penal Code Section 835(a)………………………………………………..…....21

4

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STATE OF CALIFONIA (CHP) AND JOHN GETTE**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION / STATEMENT OF FACTS

Defendants, JOHN GETTE's ("Gette") and CALIFORNIA HIGHWAY PATROL's ("CHP") weave a tale in their Motion for Summary Judgment ("MSJ") of a felony chase of a red truck driven by Decedent Javier Magdaleno, who had threatened his wife with a rifle, through the streets of Thousand Palms and the surrounding area. They paint Magdaleno as a deranged man, seeking violence and fleeing at all costs. Defendants seemingly paint a story of a dangerous felon who was cornered, with no way out, and was about to attempt to 'shoot their way out' *ala* Wyatt Earp and Doc Holliday vs Billy the Kidd and the Clanton Clan.  Their "facts" are drawn almost exclusively from the self-serving declaration of Defendant Officer John Gette, the very officer whose actions are at issue in this case. See DUMF 1-116. His self-serving declaration lays out a story of a high-stakes pursuit that ended in a shootout.

The truth is both less dramatic and more tragic: Javier Magdaleno, a 60-year-old disabled, emotionally disturbed person who, after a traffic pursuit with Riverside County Sheriff's Department ("RCSD") and CHP based out of a domestic dispute, was trapped and surrounded by police in a truck with tinted windows and was shot within seconds of the pursuit ending.  This was no hardened criminal intending harm and in need of being taken down.  He never threatened the officers with harm during the pursuit.  Disinterested witnesses, videos, photographic evidence, bullet trajectories, and Defendant Gette's fellow CHP officers show Magdaleno inside a closed vehicle and out of view, never threatening anyone at the scene and never aimed (much less fired) a weapon at anyone at the scene.  It was a senseless, unprecipitated rush to judgment by Officer Gette.

**It is up to jury to decide whose story to believe.**

On January 29, 2021, police from the RCSD responded to a 911 call from a Rite Aid located at 39155 Washington Street in the City of Thousand Palms; an employee called regarding a domestic dispute involving a Hispanic male and Hispanic female, and the female ran inside afraid and was in the backroom of the

store. (Plaintiffs' Undisputed Material Facts ("PUMF") 1-3, 6, 7, 9, 16). Magdaleno (the male) was known to employees of the Rite-Aid a calm regular customer, and Magdaleno did not threaten them in any way when the call was made. (PUMF 8, 11, 12-15). No weapons were seen by officers at Rite Aid. (PUMF 160). RCSD and CHP – who joined in the pursuit to assist – followed the red truck (driven by Javier Magdaleno) who after making an unsafe lane change, crashed into a white truck hauling a trailer, and stopped on Jefferson Street, perpendicular to the street and near the intersection with Avenue 48. (PUMF 4, 5, 23, 46).

During the pursuit, no weapons or objects were seen in the red truck or pointing out of the red truck. (PUMF 138-139, 150, 160). The pursuit ended at the intersection of Jefferson Street and Avenue 48, where Magdaleno's red truck came to a stop against the curb on the side of the road. (PUMF 4, 46). Magdaleno's red truck was surrounded by numerous CHP and RCSD units. (PUMF 20). Mobile Video Audio Recording Systems ("MVARS") of CHP Officers Alfredo Silva, Ramon Perez, and Defendant John Gette all captured the pursuit, and the events leading up to and including the shooting, and the aftermath. (PUMF 18-79).

Mr. Magdaleno was in his vehicle, with the doors closed and the tinted windows completely raised. (PUMF 31, 51, 59, 111-115, 142-145, 159, 179). Numerous witnesses, corroborated by video and photographic evidence, show the red truck' s windows are closed and tinted. (PUMF 153). Magdaleno made no verbal threats to the officers nor communicated an intention to fire on them. (Exhibits D-F; PUMF 232). RCSD Deputy Derek Thomas arrived on-scene, exited his vehicle, and within 3-4 seconds opens fire on the red truck, nine (9) rounds. (PUMF 161). No warnings or commands are heard before he fires (PUMF 162-164). Thomas fired until he no longer saw a threat. (PUMF 154).

Sharon Bailey-Comes a witness to the Incident, was in a white RV. (PUMF 80-81). Ms. Bailey-Comes pulled over to the side of the road when she saw the pursuit in her rearview mirror. (PUMF 82-84). She saw the red truck pull to the curb; the doors were closed, the windows were up and the driver never exited the

1  vehicle. (PUMF 86-87).  Seconds later she heard gunfire (PUMF 85).  While she

2  could see that a person was in the red truck, she could not see a gun. (PUMF 86).

3  Ryan Wooten a witness to the incident, was driving a Chevrolet Silverado

4  and witnessed a white Ford F-150 pulling a trailer struck by a red truck. (PUMF 89-

5  91).  His truck was about 100 feet away from the red truck when stopped. (PUMF

6  92).  He saw 3-4 officers exit their patrol vehicles and point weapons at the red

7  truck. (PUMF 93).  He saw the driver of the red truck bouncing up and down as the

8  truck came to a stop but saw nothing in the driver's hands. (PUMF 94-95).

9  Throughout the time the shots were fired, Mr. Wooten could see the right passenger

10  window and the rearview window of the red truck but was unable to tell if the

   driver was pointing a weapon at anyone. (PUMF 96).

11  Larry Tashman witnessed the Incident, and was driving northbound on

12  Jefferson Street when he saw a red pickup truck surrounded by police. (PUMF 97-

13  98).  He was 100 yards from the red truck (PUMF 99).  He saw the doors of the red

14  truck were closed and the windows were shut; he could not see inside the truck "at

15  all." (PUMF 100-101).  He heard no commands before shots were fired. (PUMF

16  102).  He never saw a rifle until officers pulled it out of the truck. (PUMF 103).

17  Mauricio Lopez-Castro, a witness to the Incident, was driving his work truck

18  when he saw a red truck behind him being pursued by police. (PUMF 104-108). He

19  saw the red truck go up on the curb and come to a stop only ten feet away. (PUMF

20  109-110). He noticed the red truck's windows were 'just below limousine grade

21  tint' that prevented seeing clearly inside the window; from his vantage point he

   could only see a shadow of a person. (PUMF 111-115). A Riverside County

22  Sheriff's Department vehicle stopped right next to his driver's side door after the

23  red truck stopped at the curb. (PUMF 116). Mr. Lopez-Castro could see inside the

24  red truck for approximately 10 seconds and could only see the back of the occupant

25  of the red truck's head and the backs of the car seats. (PUMF 118-119). He then

26  heard gunshots and ducked down. (PUMF 117, 120).

27  On January 29, 2021, CHP Officer Ramon Perez engaged in a pursuit after

28

1
2
3
4
5
6
7
8
9
10

hearing a radio call of a hysterical woman at a Rite-Aid. (PUMF 120-122). He followed a Riverside County Sheriff's vehicle to the scene, saw the red truck go up on the curbside of the road, then exited his vehicle, positioning himself between the A-pillar and door hinge of his car. (PUMF 123-124). Officer Perez thought he saw a rifle barrel, but did not see a person or target to fire at; in fact, he never saw the person inside until they were pulled out by other officers. (PUMF 125-126, 131). Officer Perez did not fire and repositioned himself because he thought he would have better cover. (PUMF 127). Once he moved, Officer Perez lost "sight picture" of the passenger window. (PUMF 128). Officer Perez noticed the windows of the red truck were rolled up, and he could not see what Officer Gette was firing at when he heard gunfire. (PUMF 129-130).

11
12
13
14
15
16
17
18
19
20
21
22
23
24

On January 29, 2021, CHP Officer Alfredo Silva was working as a CHP officer, heard a 911 call, and joined the pursuit of the red truck operated by Mr. Magdaleno. (PUMF 132-135). The only time he saw the occupant of the red truck was when it made a left turn on 42nd Avenue from Country Club. (PUMF 137). Both during the pursuit and at the scene, Officer Silva never saw the windows of the red truck go down, nor any objects come out of the truck windows. (PUMF 138-139). When he stopped at the scene, Officer Silva was southwest of the red truck; he got out with his scoped rifle - in cover - and looked down the scope at the red truck. (PUMF 140-141). The tint of the windows of the red truck appeared darker than usual to him because it was an overcast day. (PUMF 142). He saw a little bit of rocking motion in the red truck, but only saw a shadow of movement and did not see a rifle in the hands of the occupant of the red truck. (PUMF 143-144). Officer Silva never used deadly force or fired his weapon because he did not have a clear shot and could not see through the tint of the red truck's windows. (PUMF 136, 145). He heard no warnings before shots were fired. (PUMF 146).

25
26
27

On January 29, 2021, RCSD Deputy Thomas engaged in a pursuit of a red truck after arriving at the Rite-Aid in response to a call which lasted approximately ten minutes and ended at the intersection of Avenue 48 and Jefferson Street.

28

(PUMF 147, 149, 155-157). When he first encountered the driver of the red truck at Rite-Aid, Deputy Thomas put them at gunpoint; however, he did not see a rifle both before or during the pursuit. (PUMF 148, 150, 160). When the pursuit ended, Deputy Thomas got out of his vehicle and positioned himself fairly close to the red truck; he was not sure if the back window was tinted, though he agreed after reviewing photographs and video of the Incident that all of the windows of the red truck were tinted. (PUMF 151-152, 158-159). Within 3-4 seconds after the pursuit ended and he exited his vehicle, Deputy Thomas opened fire on the red truck. (PUMF 161). Though he claims he gave warnings, Deputy Thomas told investigators after the Incident there was no time for commands and no commands are heard before he fires. (PUMF 162-164). Deputy Thomas fired his weapon until he no longer saw anything in the vehicle posing a threat. (PUMF 154).

Defendant CHP Officer Gette was working as a K-9 officer, was POST trained, and understood Graham v. Connor. (PUMF 165, 171-173). Officer Gette was trained to give verbal warnings when feasible before using force. (PUMF 174). On January, 29, 2021, he joined a pursuit of a red truck involving Riverside Sheriff's and being assisted by CHP. (PUMF 176). At the end of the pursuit, Officer Gette positioned himself at the rear of Officer Perez's vehicle more than eighty (80) feet away from the passenger side of the red truck and fired two volleys of shots from his gun at the red truck; one of these shots struck and killed Javier Magdaleno. (PUMF 177-178). Officer Gette never saw Magdaleno, never saw Mr. Magdaleno aim a rifle at anyone, and shot because he assumed Magdaleno would lower the rifle and attempt to aim at him. (PUMF 166-167, 170). Gette does not remember how many rounds he fired. (PUMF 170). When Gette first aimed at the red truck to shoot, his gun didn't fire because the safety was on. (PUMF 168). He turned off the safety and began firing at the same place he sighted up assuming Magdaleno would still be there. (PUMF 168-169). During the entire Incident, Officer Gette said the passenger side window was tinted and rolled up the entire time. (PUMF 179). Officer Gette never gave any verbal warnings to the red truck before he fired.

1   (PUMF 175).  Officer Gette fired 7 seconds after Deputy Thomas stopped firing.

2   (PUMF 25-27).

3          Bullet trajectory analysis was completed by investigators of the Riverside

County Sheriff's Department of all the bullets fired at the red truck. (PUMF 180).

4   Photographs 1 and 2 show the passenger side door, front passenger window, and

5   rear passenger window of the red truck, that show eleven (11) bullet holes. (PUMF

6   181-184).  Photographs 3-4 show a top-down view from the front windshield and

7   have trajectory rods both left to right and top to bottom. (PUMF 185-186, 188-189).

8   Photograph 5 shows the inside of the cab of the red truck from the perspective of

9   the driver's side looking into the cab, and depicts two trajectories going left to right

10  and five rods travelling from the passenger side door into the cab. (PUMF 191-193).

11  In photographs 3, 4, and 5, a substantial, yet localized blood splatter can be seen in

12  the center of each photograph in the middle seat of the truck. (PUMF 187, 190,

13  194). This is the only blood splatter area that can be seen in the truck, and no other

14  blood splatter can be seen anywhere in the cab of the red truck. (PUMF 199-200).

15  Photograph 5 shows bullet point entries 'F,' 'G,' 'H,' 'I,' and 'J' are all below the

16  window of the passenger door. (PUMF 195).

17         Photographs 1, 4, and 5 also demonstrate passenger side windows are tinted.

18  (PUMF 198). Photograph 5 shows Rod 'I' enters bench seat at a downward angle

19  through the seat and directly contacts the center of the middle seat where blood

splatter is seen. (PUMF 196). Photograph 5 shows Rod 'J' enters passenger door at

20  a slightly upward angle, enters and exits right passenger seat, and stops where blood

21  splatter is seen. (PUMF 197). The bullet trajectory photographs show Officer Gette,

22  who fired into the passenger door, fired the fatal shots, and based on the significant

23  and localized blood splatter, in conjunction with the trajectories of Rods 'I' and 'J,'

24  and combined with the findings and testimony of autopsy surgeon Mark Fajardo,

25  M.D., show Magdaleno was hidden from view, below the window, and posed no

26  visible threat to Officer Gette or anyone else when he was shot. (PUMF 201-204).

27

28

Riverside County coroner Dr. Mark Fajardo, MD performed Javier's autopsy on 2/11/2021; all his opinions are in that report (PUMF 205-208, 213). Dr. Fajardo found two gunshot wounds: one to the top of the head and a fleshy wound to the right hand, and were the only wounds sustained. (PUMF 209-210, 215-218). The gunshot wound to the head was delivered by a high-powered rifle, which struck the top of the head at downward angle deviating to the left, no exit wound, and disrupting the brain and skull was the fatal blow. (PUMF 211-212, 214, 218).

Plaintiffs' police practices expert Roger A. Clark is trained in the field of police practices and tactics, and after reviewing all the evidence, prepared a report providing opinions as the tactics, decision-making and use of excessive deadly force upon Mr. Magdaleno by Deputy Thomas and Officer Gette (PUMF 220-226).  Mr. Clark opines the use of force was excessive and unreasonable because Magdaleno was contained, and officers had the ability to remain in cover; no reasonable officer would have shot at all under these circumstances (PUMF 227-228).  The use of force was excessive because officers did not reassess the danger before firing and refiring (PUMF 229). Police also violated proper police practices by failing to give any sort of warning (PUMF 230).  Police failure to remain in cover and coordinate a safe apprehension, and choosing instead begin firing upon Magdaleno, showed a reckless indifference for Magdaleno's life and was a significant tactical error. (PUMF 231). Taking the video evidence as true, Magdaleno never fired upon officers, nor did he threaten any officer, and no orders were given to Magdaleno before he was shot; in fact, the video clearly shows the first orders issued were given over four minutes after Gette stopped firing (PUMF 232).  Magdaleno never posed a threat to any police officer before he was shot (PUMF 233).  The death of Magdaleno, who was alone in his truck, was avoidable had basic police tactics and methods been used by officers, including stopping and assessing shots before shooting again; there was no attempt to ensure civilians were not in the background, there was ample cover for officers, and Magdaleno's truck was stationary and possibly disabled (PUMF 234).

**II.   ON A MOTION FOR SUMMARY JUDGMENT, INFERENCES MUST BE TAKEN IN THE NONMOVING PARTY'S FAVOR; DEFENDANTS IMPROPERLY TURNS THE STANDARD ON ITS HEAD AND SEEK TO HAVE THEIR INTERPRETATION OF THE FACTS TAKEN IN THEIR FAVOR WHEN THE FACTS ARE DISPUTED AND THE MOTION FOR SUMMARY JUDGMENT MUST BE DENIED.**

Under F.R.C.P. Rule 56, Summary Judgment exists to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(a).  A 'material" fact is one relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F. 2d 626, 630 (9th Cir. 1987).  The party asserting the existence of a material fact must show "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id.(quoting First Nat'l Bank v. Cities Serv. Co.,391 U.S. 253, 288-89 (1968)). MSJ is appropriate **only if**, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Corales v. Bennett, 567 F.3d 554, 562 (9th Cir. 2009); Green v. City and County of San Francisco, 751 F.3d 1039 (9th Cir. 2014).  A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986). A factual dispute is "genuine" if the evidence is such a reasonable jury could return a verdict for the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The 9th Circuit recognizes "summary judgment is singularly inappropriate where credibility is at issue." S.E.C. v. M & A W., Inc., 538 F.3d 1043, 1054-55 (9th Cir. 2008) (quoting SEC v. Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978)).

Defendants' MSJ fails at the first hurdle because Mr. Magdaleno was shot and killed while ducked down under the window and out of view, unseen on any MVARS, and multiple witnesses testified he posed no threat to anyone when

Defendant John Gette shot and killed him.  Defendants seek to have the Court adopt only Defendant Gette's subjective – and self-serving – declaration (in direct conflict with his prior statement and sworn deposition testimony) as to what was perceived in his favor, instead of what the law requires.  Case and statutory law make clear: inferences from evidence are drawn <u>in Plaintiffs' favor</u>, not the other way around.

## III.   DEFENDANTS' MSJ MUST BE DENIED AS TO PLAINTIFFS' 4TH AMENDMENT CLAIM, WHERE THERE ARE TRIABLE ISSUES OF MATERIAL FACT WHETHER THE USE OF FORCE WAS EXCESSIVE AND VIDEO AND TESTIMONY EVIDENCE CLEARLY SHOW IT WAS NOT OBJECTIVELY REASONABLE TO SHOOT JAVIER MAGDALENO TO DEATH

In MSJ cases involving the use of deadly force by an officer under the inquiry is inherently "fact specific" and whether the force used was reasonable "should only be taken from the jury in rare cases." <u>Headwaters Forest Def. v. County of Humboldt</u>, 240 F.3d 1185, 12-05-06 (9th Cir. 2000), *cert. granted, judgment vacated on other grounds,* 534 U.S. 801 (2001).  Accord, <u>Green</u>, 751 F.3d 1039; <u>Torres v. City of Madera</u>, 648 F.3d 1119 (9th Cir. 2011). **Summary judgment in excessive force cases should be granted "sparingly" because the reasonable use of force standard "nearly always requires a jury to sift through disputed factual contentions.**" <u>Torres</u>, at 1125, *citing* <u>Santos v. Gates</u>, 287 F.3d 846, 853 (9th Cir. 2002), and <u>Liston v. County of Riverside</u>, 120 F.3d 956, 976 (9th Cir. 1997). (emphasis added).

"[F]orce, [even if] less than deadly, is not to be deployed lightly.  To put it in terms of the test we apply: the degree of force used by [the police] is permissible only when a strong government interest <u>compels</u> the employment of such force." <u>Deorle</u>, 272 F.3d at 1280 (emphasis added). *See also* <u>Headwaters II</u>, 276 F.3d 1125, 1130 (9th Cir. 2002) ("'[T]he essence of the <u>Graham</u> objective reasonableness analysis' is '[t]he force which [i]s applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the <u>Graham</u> factors.'") (*quoting* <u>Liston</u>, 120 F.3d at 976).

Relevant factors to the government's interest in-i.e. the need-for-the force used

include, but are not limited to: "(1) 'whether the suspect poses an immediate threat to the safety of the officers or others,' (2) 'the severity of the crime at issue,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" <u>Glenn v. Washington Cnty.</u>, 673 F.3d 864, 872 (9th Cir. 2011) (*quoting* <u>Graham</u>, 490 U.S. at 396); <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 477 (9th Cir. 2007). However, these factors are not an exhaustive list. <u>Mattos v. Agamito</u>, 661 F.3d 433, 441 (9th Cir. 2011) (*en banc*). Thus, courts "must still slosh [their] way through the factbound morass of reasonableness []' ... [and] all that matters is whether [the defendant's] actions were reasonable." <u>Scott v. Harris</u>, 550 U.S. 372, 383 (2007). However, because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, ...summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." <u>Santos</u>, 287 F.3d at 853; *see also* <u>Espinosa v. City and County of San Francisco</u>, 598 F.3d 528, 537 (9th Cir. 2010.

The 'most important' <u>Graham</u> factor is if the suspect posed an 'immediate threat to the safety of officers or third parties.' <u>George v. Morris</u>, 736 F.3d 829, 838 (9th Cir. 2013) *(quoting* <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (9th Cir. 2010); *see also* <u>Smith v. City of Hemet</u>, 394 F.3d 689, 702 (9th Cir. 2005); <u>Mattos</u>, 661 F.3d at 441.

Defendants' MSJ relies <u>solely</u> upon **self-serving declarations** of Gette, in direct contradiction to his statement to investigators and sworn deposition testimony. The MSJ violates the rule of <u>Orn v. City of Tacoma</u>, 949 F.3d 1167, 1171 (9th Cir. 2020).  The <u>Orn</u> Court held a defendant cannot credit his version of self-serving facts that are disputed by the facts advanced by the plaintiff/non-moving part, writing:

> "...Clark asks us at several key junctures to credit *his* version of the facts and to assume that a jury would resolve factual disputes in *his* favor. This we are not permitted to do. [citations omitted]. Unless Orn's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," we must assume that a jury could find Orn's account of what happened

1
2

> credible, even if it conflicts with Clark's account. [citations omitted]. Here, nothing in the record blatantly contradicts Orn's account of the events in question. The narrative that follows therefore resolves all disputed factual issues in his favor."

3

Orn, 949 F.3d at 1171.

4
5
6
7
8
9
10

Clearly, Magdaleno posed no imminent threat and/or it is a triable issue of fact.  First, "Gette's [subjective] belief" does not determine if the use of deadly force was reasonable.  It is an "objective" reasonable officer standard. Graham.  No objective reasonable officer would use deadly force against someone they can't even see, who had ducked down out of sight and lying under the window in a vehicle with tinted windows, and posing "no immediate threat," and who the physical evidence shows was inside the pickup truck lying on the seat.

11
12
13
14
15
16
17
18

Second, Magdaleno never "pointed a rifle" at the scene. All three MVARS show the doors are closed, windows are tinted and fully raised, Magdaleno cannot be seen, and no gun is seen in the truck (supported by numerous eyewitness testimony); **this clearly disputes Gette's version of events**.  RCSD Deputy Thomas testified he stopped firing because Magdaleno "no longer posed a threat" and had 'disappeared' from view.' Moreover, two other Officers (Silva and Perez) did not shoot with at least one of them saying he "did not have a clear shot." Most likely, Magdaleno was below the window, lying on the seat when the shot struck the top of his head.

19
20
21
22
23
24
25
26
27

Also relevant to the excessive force inquiry is "what other tactics if any were available" to effect the arrest. Headwaters, 240 F.3d at 1204; Smith, 394 F.3d at 701 (explaining police must consider less intrusive alternatives).  See also Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994), and Bryan, 630 F.3d 805, n. 15.  Here, Gette failed to use less intrusive alternatives, such as: Calling for backup and containment; tactical plan; use of cover; and calling for canine, airship and SWAT. Gette displayed a gross lack of situational awareness and fundamental tactical errors in this incident.  Verbal warnings should also be given when feasible.  Franklin, 31 F.3d at 876.  A common verbal warning is "stop or I'll shoot."  Failing to give an appropriate verbal warning is another factor showing excessive force.

28

1   Defendant's MSJ is baseless and contrary to the facts.  Here, Magdaleno,
2   based on the evidence and testimony was under the window, was not visible and
3   shot by Gette through the top of the head, and presented no immediate threat to
4   anyone's safety when shot. A reasonable officer acting consistent with standard
    police practices would not have used lethal force. (PUMF 227-235).

5   Deputy Thomas fired a first volley of nine (9) shots.  Thomas said he stopped
6   firing because Magdaleno "no longer posed a threat" and had "disappeared" from
7   view.  The windows of the pickup truck are tinted and cannot be seen into. Gette's
8   claim of 'fear' has no basis, viewing facts in light most favorable to Plaintiffs.  Gette
9   is not in "fear" of Magdaleno; nothing is happening, and he didn't give himself the
10  time to assess anything, as shown in the MVARS.  In a span of just 22 seconds,
11  Gette piled out of his car, jogs into a squatting position by the right rear of Perez'
12  patrol vehicle, the left cover and simply started firing, instead of staying in cover and
13  waiting as he was trained.  Gette then fired 11 shots in 7 seconds in two (2) separate
14  volleys.  Gette shot at Magdaleno 14 seconds after he got out of his car, and a mere 7
15  seconds after Deputy Thomas had stopped firing.  When asked immediately after the
16  shooting how many shots he fired his answer is "I don't remember."  **"I don't**
17  **remember" is not the objective immediate threat required to use deadly force**.

18  This shooting was no 'reaction to the movements and actions of the suspect'
19  as no one else could see what was going on in the truck.  Certainly the other CHP
20  Officers (Silva and Perez), looking at the same thing, could not and did not fire. This
21  was little more than Gette hearing shots, then running up and 'shooting first and
22  asking questions later.' A jury could rightly conclude Gette decided to shoot
23  Magdaleno when he exited his car, or decided to shoot because he heard Thomas's
    shots (i.e. sympathetic fire) or as he was running towards Perez' car.

24  Shooting to death persons who are visibly unarmed is a triable issue of fact
25  regarding excessive force that has been established law for years. Tennessee v.
26  Garner, 471 U.S. 1, 11 (1985) [shooting of a visibly unarmed fleeing subject is
27  unconstitutional use of force under 4th Amendment].  A.K.H. v. City of Tustin, 837
28

F.3d 1005, 1013-1014 (9th Cir. 2016) citing Garner, (1985) 471 U.S. at 11 ["It has long been established that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead."]. Longoria v. Pinal County, 873 F.3d 699, 703-711 (9th Cir. 2017) [reversal of MSJ-triable issues of fact whether Decedent was "in the process of putting his hands over his head reflexively or in an effort to surrender" or whether "when Longoria turned to raise his hands he threatened [Rankin] or his fellow officers with a "shooters stance."].

Here, we have a man in a pickup truck with the doors closed, tinted windows all the way up, not moving and surrounded by police. Magdaleno is never clearly seen by anyone (police or civilian), and is **never seen on any of the MVARS videos** (windows are tinted, doors closed, windows up). The trajectory of the bullets, the limited and heavy blood splatter in the middle seat of the truck, and the fatal wound to the top of the head sustained according to autopsy surgeon Dr. Fajardo paint a picture of a person well below the window-line, head facing the passenger door, and posing no immediate threat to Officer Gette (or anyone else). This is an issue of fact for the Jury to determine the credibility of Officer Gette's statement against the testimony of numerous witnesses and the multiple MVARS from different angles.

Gette's latest description is little more than his subjective, hindsight interpretation of what he thought (never mind he asserts he deduced all of this in literally a matter of seconds, and two of his fellow officers saw the exact same thing and did the exact opposite). This is just another Jury issue. For example, even if Magdaleno had something that looked like the rifle it is still a triable issue of fact on pointing it. See Estate of Andy Lopez v. Gelhaus, et.al., 871 F.3d 998, 1011-1014 (9th Cir. 2017) [toy gun case-triable issue]. Properly framed, with the facts taken in Plaintiffs' favor **as they must be** shooting Magdaleno when he is in a pickup truck with highly tinted windows, unable to be seen on Defendants' own MVARs, is a triable issue of fact as to whether Gette saw a gun at all and whether there was an "immediate threat" and "unreasonable force" for the Jury. See Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991) [holding the use of deadly force is

unreasonable when suspect did not point gun at officers].

A Jury could easily conclude Gette, who could not even remember firing his second volley of shots at all, simply panicked as he came out of his car, heard the shots fired by Thomas and then fired on the pick-up truck.  Gette failed to assess his backdrop, shooting down range at innocent civilians in their vehicles at the next intersection, hitting one of the cars.

Additionally, see Ting v. United States, 927 F.2d 1504, 1501 (9th. Cir. 1991) [MSJ on excessive force Qualified Immunity reversed including on evidence of bullet trajectories]; and J.L.D. v. City of Los Angeles, 555 F.App'x 670, 671 (9th Cir. 2014); Ting, 927 F.2d 1501 [MSJ on excessive force Qualified Immunity reversed including on evidence of bullet trajectories]. Here, the bullet trajectories are into the top of Magdaleno's head and it is definitely Gette's shot that killed Magdaleno because it is a rifle bullet and Thomas (the only other one to fire) was shooting a handgun.  The blood on the seat and the bullet trajectory rod show Magdaleno's head was on the seat cushion facing the door.  Note that all of the shots from Thomas are shot from back to front with high trajectory rods – none of them struck Magdaleno. The reality is none of the high shots by Gette struck Magdaleno either – it was the shot through the door panel by Gette (where Magdaleno was lying down on the seat). The simplest explanation is the truth – and certainly a Jury could conclude –none of the high shots hit Magdaleno because he was lying on the seat, not visible because of the heavily tinted windows, not pointing the rifle at anyone but Gette fired anyway.

In Cruz v. City of Anaheim, 765 F.3d 1076 (9th Cir. 2014), the 9th Circuit again reversed the lower court granting of MSJ in a shooting case alleging excessive force in violation of the 4th Amendment.  In ruling, the Cruz court stated the following: "But the jury could also reasonably conclude that the officers lied." Cruz, supra, at 1079-1080 (emphasis added). **This case is stronger because in Cruz, In** Cruz there was no video or witnesses who said Cruz could not be seen – **here we have both**.

\\

\\

The Cruz Court also wrote:

"But in the deadly force context, we cannot "simply accept what may be a self-serving account by the police officer." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994). Because the person most likely to rebut the officers' version of events— the one killed—can't testify, "[t]he judge must carefully examine all the evidence in the record ... to determine whether the officer's story is internally consistent and consistent with other known facts." Id.; see also Gonzalez v. City of Anaheim, 747 F.3d 789, 794-95 (9th Cir.2014) (en banc). This includes "circumstantial evidence that, if believed, would tend to discredit the police officer's story." Scott, 39 F.3d at 915."

Cruz, supra, at 1079.

The shooting of Magdaleno, a use of deadly force against a man who could not be seen as shown by video, physical evidence and testimony, who was out of view and was "no longer a threat" and had "disappeared from view", is an intrusion of the highest degree.  Therefore, triable issues of material fact exist and MSJ must be denied as to the 4th Amendment Claim.  See also Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003).  [Only in the absence of material disputes is it a "pure question of law."] and Scott v. Harris, 550 U.S. 372, 381 (2007).

## IV.   THERE IS NO BASIS FOR QUALIFIED IMMUNITY WHERE THE FORCE USED WAS EXCESSIVE AND THE LAW WAS CLEARLY ESTABLISHED THAT AN OFFICER CANNOT SHOOT TO DEATH A SUBJECT WHO POSES NO THREAT

Defendants assert Qualified Immunity. It does not apply in this case.  The doctrine of Qualified Immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See also Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (citing Brosseau v. Haugen, 543 U.S. 194, 198, (2004).) See also Bruce v. Yist, 351 F.3d 1283, 1290 (9th Cir. 2003); Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).

Qualified immunity involves a two-part inquiry: first, whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right (with

1
2
3
4
5

facts taken light most favorable to plaintiff); and second, whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson at 232; 236-242 (quoting Saucier v. Katz, 553 U.S. 194, 201 (2001). See also Mattos v. Agamito, 661 F.3d at 440. The Supreme Court has held courts may exercise discretion in "deciding which of the two prongs should be addressed first, in light of circumstances in the particular case at hand." Pearson, at 236 (2009).

6
7
8
9
10

As to first prong, Constitutional violation, Courts ask if "[t]aken in the light most favorable to the party asserting the injury, ...the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201; Mattos, 661 F.3d at 440. Violation of constitutional right is already demonstrated based on the section above dealing with 4th Amendment Violation.

11
12
13
14
15
16
17
18
19
20
21
22
23

As to second prong, a right is "clearly established" if "in light of the specific context of the case," it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201-202. The Supreme Court has instructed courts should look to see if there are "cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely" **or if** there is "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999). See also Anderson v. Creighton, 483 U.S. 635, 640 (1987); A.K H., 837 F.3d at 1013 (9th Cir. 2016). Notably, *where officers' "entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate*." Wilkins, 350 F.3d at 956, (emphasis added). Here that is exactly the case. **The factual issues regarding the use of force are all disputed; MSJ must be denied.**

24
25

There are factual issues whether Magdaleno represented an immediate threat to life or safety (he could not even be seen) and the law was clearly established.

26
27

Qualified Immunity is rarely granted in a deadly force shooting case because the law has been clearly established in this area of years ["Determination whether

28

the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." Headwaters, 240 F.3d 1185, *cert. granted, judgment vacated on other grounds,* 534 U.S. 801 (2001). *Accord,* Green, 751 F.3d 1039; Torres, 648 F.3d 1119] *see also* Estate of Lopez v. Gelhaus, et.al., 871 F. 3d 998, 1006 (9th Cir. 2017)("We have held 'summary judgment should be granted sparingly in excessive force cases'."); *quoting* Gonzalez v. City of Anaheim, 747 F.3d at 795. This is because reasonableness is traditionally a factual inquiry reserved for the jury. See Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

In Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir. 1991), police responded to Decedent allegedly hitting the woman he lived with. When police attempted to break down the door, Decedent fled with a semiautomatic rifle in his hands. The court in Curnow, held officers were not entitled to qualified immunity where the individual had picked up a rifle, but was not facing nor pointing a rifle at the officers them when he was shot. Id at 323-25. Just like here, a disputed fact was raised Decedent did not raise his gun before the police shot him – (here you can't even see Magdaleno much less a weapon). Here, Magdaleno was shot in the top of the head, wasn't pointing a gun at Gette or anyone else, and out of view when he was shot (the bullet directly hit the top of the head). See Curnow, *supra* at 325; *see also,* Brandenburg v. Cureton, 882 F.2d 211, 213-215 (6th Cir. 1989) (unreasonable to shoot suspect who previously threatened violence to officers but wasn't pointing gun at officer or others).

In Estate of Lopez, (871 F.3d 998 (9th Cir. 2017) the 9th Circuit stated Curnow gave "fair notice" the use of deadly force is unreasonable where "the victim does not directly threaten the officer with the gun." In Estate of Lopez, defendant officer shot decedent, believing they saw a "rifle barrel was beginning to rise." Id. at 1004. However, as in the current case, the evidence the gun began to rise came exclusively from two officers at the scene. Id. at 1012. Because, as is the case here, there was other evidence contrary to the officers' assertions, such as clear video evidence and witness observations, the Court found there was a triable issue of fact

and denied MSJ. Id. The 9th Circuit adheres to a rule that "mere possession of a weapon is insufficient to justify the use of deadly force" Id. at 1013. (*quoting* Harris v. Roderick, 126 F. 3d 1189, 1204 (9th Cir. 1997). The Lopez court also held circumstantial evidence must be examined if it would tend to discredit an officers story. Lopez found the 9th Circuit held that when officers' self-serving testimony is the only evidence supporting the proposition a gun barrel is being aimed towards them, circumstantial evidence indicating otherwise might allow a jury to find "that the officers lied," supporting a denial of summary judgment. Id. *See also* I.A. v. City of Emeryville, et.al. 15-CV-04973-DMR (N.D. Cal. 2017)[separate volleys of shots that took place within 7 seconds - no qualified immunity].

More recently, video evidence has emerged as a common way to discredit officer testimony. *See, e.g.,* Diaz v. County of Ventura, 512 F.Supp.3d 1030, 1036 (Central Dist. CA 2021). In Diaz, decedent was a felon and known gang member and was considered armed and dangerous. Diaz, 512 F.Supp. at 1036. Diaz led several officers on a dangerous high-speed chase. Id. Officers pursued and video-recorded the chase. Id. Diaz crashed his car into the side of the road and stopped. Id. A standoff occurred, with multiple officers surrounding Diaz's car with weapons drawn. Id. Diaz threatened to shoot the officers and said he would be "coming out shooting." Id. The standoff ended when, according to the defendant officer Green, Diaz "extended his left arm, punched out a barrel of a gun at me and came towards my direction." Id. Green then shot Diaz, killing him. Id.

The Diaz Court found there was conflicting video and photo evidence which, although unclear, may have conflicted with the account by the officer. Id. The Court found: **"where the non-moving party is the one relying on video evidence to introduce a dispute of material facts, rather than foreclose one, the burden is even lower"** to introduce a dispute of material facts in response to a summary judgment motion. Id. at 1042 (emphasis added). Relying on video and photo evidence, the Court concluded a reasonable trier of fact could conclude Green never actually perceived the gun, or his mistake in perceiving the gun was unreasonable.

Id. at 1042. In addition, the Court noted, even when a suspect is armed with a deadly weapon, "the suspect must actually create an **immediate, objective threat to the officer**, such as by making a "furtive movement, harrowing gesture, or serious verbal threat." Id. at 1043. (Emphasis added).

Here, the shooting of Magdaleno has several key similarities to Diaz. Magdaleno led police on a chase.  The chase was recorded (see Ex. D-F). Magdaleno crashed his truck and was surrounded by police, leading to a standoff by multiple officers.  The standoff here was much shorter than in Diaz, however.  Further, Diaz made threats to the officers to shoot them.  **Magdaleno made no such threats**. Here, multiple MVARS and testimony dispute the notion Magdaleno posed any sort of threat to the officers or anyone else.  The Court should allow wide latitude in determining what a jury might find from the video.

Here, a jury could find no such movement occurred and that Magdaleno was cowering in his car, laying on the seats. Magdaleno being in a prone position would be consistent with him being shot through the top of the head with a rifle round, with multiple witness testimony and MVARS showing Magdaleno's figure was not in the car window, and the fact other CHP officers with similar vantage points chose not to fire as they saw no immediate threat. As in Diaz, where decedent was acting erratically and bizarrely, a jury could find the officers should have perceived "an emotionally disturbed individual acting out and in need of help, rather than a hardened criminal intending harm and in need of taking down." Id. at 1044.

In a case where the officer gave no verbal commands and fired less than two seconds after exiting their vehicle, the court determined a reasonable jury could find the sense of urgency to be of the officer's own making. S.R. Nehad v. Browder, 929 F. 3d 1125 (9th Cir. 2019).  Moreover, in Espinosa v. City and County of San Francisco, 598 F.3d at 538, the Court held one officer firing twelve (12) shots and another firing thirteen (13) shots, raised triable issues of fact regarding whether the deadly force was reasonable. As the Espinosa court pointed out, it is really Defendants who bear the burden at the summary judgment stage to show there are

"no questions of fact whether the use of force was reasonable." <u>Id</u>. at 538. *See also* <u>Fancher v. Barrientos</u>, 723 F.3d 1191, 1199-1201 (10th Cir. 2013).  <u>Defendants' MSJ does not even come close to this standard and must be denied.</u>

First, Deputy Thomas fired 9 rounds, 3-4 seconds after exiting his vehicle; he <u>admits commands are not heard on any MVARS before firing</u>. (PUMF 161-163). The, seven seconds after Thomas stops shooting, Gette fired 11 rounds in two volleys at Magdaleno (with a one second pause in between)(PUMF 25-27). <u>See</u> <u>Rivers v. Bowers</u>, 2008 WL 2079406 (S.D. Ohio 2008) (excessive force found when shots fired after threat has passed). Gette also gave no commands before firing. (PUMF    ). The 'urgency' was one created by police; the MVARS clearly show the red truck is contained, no movement, and no danger to the officers – **yet Gette fired anyway**.

The Supreme Court has cautioned "officials can be on notice (their) conduct violates established law even in novel factual situations." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002). "[I]n the absence of 'a case directly on point,' we compare 'specific factors' relevant to the excessive force inquiry to determine whether a reasonable officer would have known that the conduct in question was unlawful." <u>Isayeva v. Sacramento Sheriff's Dep't</u>, 872 F.3d 938, 947 (9th Cir. 2017) (*quoting* <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (9th Cir. 2010)). While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id</u>. at 1152 (*quoting* <u>White v. Pauly</u>,137 S. Ct. 548, 551 (2017)).

In all the above-cited cases, the subjects were holding (or believed to be holding) weapons and, like Javier Magdaleno, were not immediately threatening to use them.  Therefore, the above-cited cases clearly establish the threat of harm must be "immediate" and supported by "objective factors" justifying an officer's professed fear for his safety. <u>Bryan</u>, at 826. Accordingly, the second prong of the qualified immunity prohibits granting qualified immunity.

## V.   DEFENDANTS' MOTION SHOULD BE DENIED AS TO PLAINTIFF'S SUBSTANTIVE DUE PROCESS VIOLATION, 14TH AMENDMENT CLAIM, WHERE THERE ARE TRIABLE ISSUES OF MATERIAL FACT WHETHER DEFENDANT GETTE ACTED WITH DELIBERATE INDIFFERENCE OR PURPOSE TO HARM UNRELATED TO ANY LEGITIMATE LAW ENFORCEMENT PURPOSE

Under the 14th Amendment Due Process Clause, a claim exists when police kill a person without legal justification. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1106 (9th Cir. 2014); Porter v. Osborn, 546 F.3d 1131, 1136 (9th Cir. 2008). A cognizable substantive due process claim of an abuse of power is that which "shocks the conscience" or violates the decencies of civilized conduct. County of Sacramento v. Lewis, 523 U.S. 833, 845-47 (1998); Tatum v. Moody, 768 F.3d 806, 820-21 (9th Cir. 2014). A plaintiff can satisfy the standard in either of two ways, (1) by showing the officer acted with "deliberate indifference" or (2) "the more demanding showing that he acted with a purpose to harm." Porter, supra, at 1137. See also Tatum, 768 F.3d at 820-21 (distinguishing "conduct that either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty); Gant v. City of Los Angeles, 717 F.3d 702, 707 (9th Cir. 2013). "Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. Tatum, supra, at 821 (citing Gant); Wilkinson, 610 F.3d at 554. Here, deliberation was practical both before and during the use of force. Magdaleno had no opportunity to react to what was occurring. Nonetheless, it is up to the jury to make that determination by considering all the facts.

## VI.   DEFENDANTS' MOTION MUST BE DENIED AS TO PLAINITFFS' SUPPLEMENTAL STATE LAW CLAIMS

### A. Defendants' MSJ as to Plaintiffs' Battery Claim Must be Denied.

A state law Assault and Battery claim can be maintained and is appropriate, especially on the current facts. Rains vs. Superior Court, 150 Cal.App.3d 933 (1984); and Lopez vs. Surchia, 112 Cal.App.2d 314 (1952).  While a peace officer has the privilege to use reasonable force to affect an arrest, prevent escape, or overcome resistance [Penal Code §835, 835(a); see also Fobbs vs. Los Angeles, 154 Cal.App.2d 464 (1957)], a Peace Officer is never privileged to use excessive force.

1
2
3
4
5
6

Scruggs vs. Haynes, 252 Cal.App.2d 256 (1967). A prima facie case for battery is established under California law when plaintiff proves an officer used unreasonable force against him in the course of making a lawful arrest or detention. Saman v. Robbins, 173 F.3d 1150, 1157 (9th Cir. 1999). An officer that used unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force. Edson v. City of Anaheim, 63 Cal.App.4th 1269 (1998).

7
8
9
10
11
12

California Jury Instruction CACI 1305 summarizes California Law on "Battery by Peace Officer" and sets forth the essential factual elements. The key element is the Defendant Officer Gette "used unreasonable force." In California, the same reasonableness standard applicable to 42 U.S.C. §1983 claims is used in evaluating police officer excessive force claims in battery or wrongful death actions. Hernandez v. City of Pomona, 46 Cal. 4th 501, 518 (2009); Edson, supra, at 1274.

13
14
15
16

The same facts showing a violation of civil rights supports these state law claims. Gette shot a man who was not visible, and posed no immediate threat. Gette then came up with varying inconsistent versions that are untrue. Clearly, there are triable issue of material fact on Assault and Battery.

17

**B. Defendant's Motion for Summary Judgment Must Be Denied on Plaintiffs' Negligence Claim.**

18
19
20
21
22
23
24
25

California applies the familiar common law elements of the tort of negligence: a duty of care, a breach of that duty, and a requirement the breach was the proximate or legal cause of the resulting injury. In police cases, the conduct in question "must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care such doubt must be resolved as a matter of fact rather than of law." Grudt v. City of Los Angeles, 2 Cal.3d 575 (1970) (citations omitted).

26
27
28

The California Supreme Court wrote in Hayes v. County of San Diego, 57 Cal.4th 622 (2013): "Law enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in

determining whether the use of deadly force gives rise to negligence liability. Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." Id at 639-640.  The 9th Circuit relied on the California Supreme Court's holding in Hayes II, 736 F.3d 1232, 1236 (9th Cir. 2013).  However, for state law negligence Hayes sets the governing standard. California Jury Instruction CACI 440 summarizes California Law on "Unreasonable Force by Law Enforcement Officer in Arrest or Other Seizure" and sets forth the essential factual elements. All of the elements are satisfied in this current case.

More recently, the 9th Circuit cemented Hayes in Tabares v. City of Huntington Beach, 988 F.3d 1119, 1125 (9th Cir. 2021): "Officers are liable 'if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, the use of deadly force was unreasonable.'" Id. (citing Hayes). Under California law, the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, **even if his use of deadly force at the moment of shooting might be reasonable in isolation.** Id. (citations omitted) (emphasis added). It is clear federal law "generally focuses on the tactical conduct at the time of shooting" even when a "prior constitutional violation may proximately cause a later excessive use of force. Id. (citations omitted).  The negligence claims analyze the totality of the circumstances including pre-shooting conduct. Id. at 1125. Accordingly, the Tabares Court held: "California negligence law regarding the use of deadly force overall is "broader than Federal 4th Amendment law." Id. (citations omitted).

In terms of the statutory immunity argument, Gette's conduct is glaringly wrong in light of Hayes and Tabares. Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." Hayes; *see also* Cal. Gov. Code §820. "Public entities are generally liable for injuries caused by the negligence of their employees acting within the scope of their

employment." <u>Hayes</u>.; *see also* Cal. Gov. Code §815.2.

**Gette violated every basic precept of what police officers are trained to do when he shot Mr. Magdaleno: stay in cover, wait for backup, and extract occupants at gunpoint from a position of advantage. <u>Here, there was no rush.</u>** Officers clearly had the advantage; Magdaleno was essentially trapped with nowhere to go. Instead of coordinating a plan, Deputy Thomas opened fire within four seconds of exiting his vehicle (PUMF 161). Then, 7 seconds after he finished firing, Officer Gette opens fire without any assessment before and during firing. **<u>Gette in a span of 22 seconds rushed in and fired 11 shots in 7 seconds</u>**. (See PUMF 25-27).

Plaintiffs' Police Practices expert, Roger A. Clark opines: the use of force was excessive, unreasonable and violated POST training (subject contained, Gette had cover, and no reasonable officer would have fired)(PUMF 227-228); excessive force was used because Gette did not reassess the danger before firing (PUMF 229); no warnings were issued before firing (PUMF 230); failing to stay in cover and coordinate a plan, and instead firing upon Magdaleno, showed a reckless indifference for life and was a significant tactical error. (PUMF 231); Magdaleno posed no threat of any harm before he was shot (PUMF 232-234); and Magdaleno's death was avoidable had basic police tactics and methods been used. (PUMF 235).

### C. Defendant's Motion for Summary Judgment Must Be Denied on Plaintiff's California Civil Code §52.1 Claim

Cal. Civ. Code §52.1 sweeps broadly, protecting against all conduct aimed at "interfere[ing] with rights "secured by" the constitutional or statutory law of the United States, or of California, where the interference is carried out "by threats intimidation or coercion," whether or not the offending conduct is motivated by discriminatory animus." <u>Cornell v. City and County of San Francisco</u>, 17 Cal.App.5th 766, 791 (2017) *citing* <u>Venegas v. County of Los Angeles</u>, 32 Cal.4th 820, 843 (2004).

Section 52.1(b), provides for recovery of compensatory and punitive damages, injunctive relief, civil penalties, and attorneys' fees. CACI 3066 "Bane Act -- Essential Factual Elements (Civ. Code § 52.1)" contains three elements: 1.

That Defendants acted violently against to prevent MAGDALENO from exercising his rights; 2. That Defendants intended to deprive MAGDALENO of his enjoyment of the interests protected by the right; 3. That MAGDALENO was harmed; and 4. That Defendants' conduct was a substantial factor in causing MAGDALENO harm. All of these elements are triable facts based on the evidence cited herein.

Government Code §820.2, states: "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion is abused." Johnson v. State of California, 69 Cal.2d 782, 793 (1968), the leading case interpreting Government Code §820.2, held: "discretionary act immunity applies only to basic policy decisions." §820.2 does not provide immunity to peace officers if an officer uses excessive force. *See also* Price v. County of San Diego, 990 F. Supp. 1230, 1244 (S.D. Cal. 1996). Since Gette is liable under Section 52.1, CHP is liable.

## VII. CONCLUSION

For all of the foregoing reasons Defendants' Motion for Summary Judgment must be denied.

DATED: July 24, 2023

GUIZAR, HENDERSON & CARRAZCO, LLP

*/S/ Angel Carrazco, Jr.*

By: _____

Angel Carrazco, Jr.
Kent M. Henderson
Attorneys for Plaintiffs